(C. D. 842)

MUTUAL SUPPLY CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 7, 1944)

*Lawrence & Tuttle* (*Charles F. Lawrence* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks, Harold L. Grossman*, and *Joseph A. Howard, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on merchandise imported from Japan invoiced as "40 tubs, preserved vegetables. 'Rakkyozuke'." In liquidation the collector assessed duty on the merchandise at the rate of 35 per centum ad valorem under paragraph 775 of the Tariff Act of 1930. The plaintiff claims that duty should be assessed at 25 per centum by virtue of the terms of the trade agreement with the Netherlands, published in T. D. 48075. The provisions involved read as follows:

PAR. 775   Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for;   *   *   *   35 per centum ad valorem;   *   *   *.

PAR. 775, as modified by the trade agreement with the Netherlands, T. D. 48075.   Onions pickled, or packed in brine, 25% ad val.

A similar issue was decided in *B. R. Anderson & Co.* v. *United States*, 4 Cust. Ct. 292, C. D. 345, on a meager record, adversely to the importer's contention, the court finding that the presumption

attaching to the collector's classification had not been overcome. The instant controversy is a new case on the same subject.

A sample representing the merchandise in the instant case was received in evidence and marked "exhibit 1," and the plaintiff called Mr. Ralph De Ong, who appears to be well qualified to express an opinion as to the character of the merchandise. He testified that he took a B. S. degree at the University of California in 1915, an M. S. degree in the same institution in 1922, and a doctor's degree at Stanford University in 1928, the subject of his studies being "principally, entomology and plant pathology, chemistry, physiology, and a general course on agriculture and horticulture pertaining to our economic crops, both orchard and truck crops"; that he taught at the university farm at Davis for 5 years and at the University of California for 2 years; that plant identification was a specific part of his work in connection with sugar beets, beans, onions, carrots, and, to a lesser degree, with all the principal crops; that he acted as consultant for some of the large truck-growing corporations, working in the fields with the men; that he has had experience in differentiating between the characteristics of the onion, garlic, leek, and chive; that the name or genus of those different plants is *"Allium."* The witness was shown exhibit 1. He stated that he had examined it to determine the characteristics which would be used for distinguishing the material from similar types of bulbs and reached the conclusion that it consisted of true onions. When asked for the characteristics of onions, he said:

Principally, an enlarged bulb with a comparatively narrow neck or stem, a fibrous root, and one of the several characteristics of the onion and its relatives is the pungent, aromatic oil.

He testified that the exhibit possesses those characteristics. On cross-examination, he stated that the articles in exhibit 1 are not leeks. When asked to differentiate between leeks and onions, the witness said:

A leek does not have an enlarged bulb as we have here. The stem of the leek is scarcely larger than the base of the plant; there is practically no enlargement. In cutting the surface across these bulbs you will see the enlarged storage leaves, and that does not occur in the case of leeks.

No testimony was introduced at the trial with respect to the imported condition of the commodity, but, subsequent to the trial, the parties entered into a written stipulation in which it is stated that "the merchandise involved herein is pickled."

The issue before the court is whether the merchandise herein involved is "onions, pickled." It is manifest that it is pickled vegetables, but, if it is also pickled onions, it would be more specifically provided for under the terms of the trade agreement with the Netherlands. The negotiators of the trade agreement concluded to give pickled onions a lower rate of duty than other pickled vegetables.

Counsel for the defendant argues in his brief that the plaintiff failed to overcome the presumption of correctness attaching to the collector's classification because the evidence is not sufficient to establish that the imported articles are onions and that the authorities do not sustain that contention, citing *B. R. Anderson & Co.* v. *United States, supra,* and quoting the definition of "Rakkyo" in Hepburn's Japanese-English Dictionary, seventh edition, 1903 edition, and Saito's Japanese-English Dictionary, 1930 edition. The definition in Hepburn's Japanese-English Dictionary reads as follows:

> *rakkyo.* A vegetable of the garlic class. Scallion. *Allium bakeri.*

Saito's Japanese-English Dictionary defines "Rakkyo" as "The Shallot."

Webster's New International Dictionary, 1933 edition, defines "scallion" and "shallot" as follows:

> *scallion.* *a.* The shallot. *b.* The leek. *c.* Any onion which does not form a good bulb, but remains with a thick stem like a leek.
> *shallot.* 1. *a.* Bot. An onion-like plant (*Allium ascalonicum*) producing small clustered bulbs used like garlic for flavoring. *b.* A small onion.

We fail to find that the authorities dispute the evidence of witness De Ong, because Webster's dictionary shows that onions come within the definitions of "scallions" and "shallots" which are among the translations of the Japanese word "Rakkyo" given in the Japanese-English dictionaries upon which the defendant relies.

In *United States* v. *Pacific Trading Co.,* 14 Ct. Cust. Appls. 131, T. D. 41649, the court passed upon merchandise which appears to be identical with that herein involved. The court quotes the appraiser's report which stated that "the merchandise covered by this protest is invoiced as 'Rakkio-Zuke.' It consists of scallions put up and preserved in a liquid composed of vinegar, salt, and sugar." It was stipulated in that case that scallions are onions. The court described the exhibit in evidence as follows:

> The exhibit before us is a bottle containing about a pint of what appear to be the bulbs of green onions with the tops cut off. The onions are from 1 to 2 inches in length, with an average thickness of about three-fourths of an inch, and are immersed in a dark-colored liquid.

The issue in that case was whether the merchandise was dutiable at 1 cent per pound as "onions" under paragraph 768 of the Tariff Act of 1922 or at 35 per centum ad valorem as "vegetables * * * pickled" under paragraph 773. The court followed its ruling in *United States* v. *La Manna, Azema & Farnan et al.,* 14 Ct. Cust. Appls. 123, T. D. 41647, decided concurrently therewith, and held that the pickled onions were properly classified by the collector under paragraph 773. In the *La Manna, Azema & Farnan* case, *supra,* the court said that the pickled onions were no longer onions but were pickles.

The decision in *United States* v. *Pacific Trading Co.*, *supra*, is not in point in the instant case because here we have a different question involved, but it shows· that the class of articles herein involved has been considered as pickled onions by the court. That decision was called to the attention of Congress in the Summary of Tariff Information of 1929, volume 7, page 1458, as relating to pickled onions classified under paragraph 773 of the Tariff Act of 1922, which is the predecessor of paragraph 775 of the present act. It must be assumed that the negotiators of the trade agreement with the Netherlands were familiar with that decision when they agreed to lower the rate of duty on pickled onions.

An examination of exhibit 1 in this case shows that the articles are similar to those described in *United States* v. *Pacific Trading Co.*, *supra*, though they average a little shorter in length. There is no liquid in the exhibit but the articles all have bulbs at the bottom with small necks or stems, which are characteristic of onions.

We are of opinion that the record shows conclusively that the imported articles are onions, pickled. The importation arrived in 1939 when the trade agreement with the Netherlands was in force and when the products of Japan were subject to the generalization clause in paragraph 350 (a) (2) of the Tariff Act of 1930, as amended. We hold that the merchandise is dutiable at 25 per centum ad valorem as "onions, pickled" under the terms of the trade agreement with the Netherlands, *supra*. The protest is sustained. Judgment will be rendered in favor of the plaintiff.

(C. D. 843)

Tɪ Hᴀɴɢ Lᴜɴɢ & Co. *v.* Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs

United States Customs Court, Third Division

(Decided April 7, 1944)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.